UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TEXTRON FINANCIAL CORPORATION, a
Delaware corporation,

        Plaintiff,

                                   Case No.: 3:09-cv-00002-MMH-TEM

v.                                   **Dispositive Motion**

RV HAVING FUN YET. INC., a Florida
corporation. and PHILLIP ORENSTEIN, an
individual,

        Defendants.

_____/

## TEXTRON FINANCIAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, Textron Financial Corporation ("TFC"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 hereby moves this Court for entry of summary judgment in its favor and against Defendants RV Having Fun Yet, Inc. ("RV Fun") and Phillip Orenstein ("Orenstein"). This is a contract case with no genuine issue as to any material fact, and TFC is entitled to judgment as a matter of law both as to its Complaint as well to RV Fun's Counterclaim.

## I.    STATEMENT OF FACTS

1.    On or about  August 24, 2006, PHILLIP ORENSTEIN on behalf of RV FUN (the "Debtor"), executed and delivered to TFC, a Credit and Security Agreement (the "CASA"). A true and correct copy of the CASA is attached to the Verified Complaint as Exhibit A. Verified Compl. ¶ 6; *see also* Rule 26(a) Disclosures by Defendants RV Fun and

Orenstein, attached hereto as Exhibit A, § B ¶ 1(identifying the CASA as being attached to the Verified Complaint).[1]

2.      The CASA has a choice-of-law provision stating that the contract shall be governed by and construed in accordance with Rhode Island law.  CASA § 16

3.      On or about August 24, 2006, Orenstein executed and delivered a personal Guaranty to TFC, a true and correct copy of which was attached to the Verified Complaint as Exhibit B.  Verified Compl. ¶ 8.

4.      Pursuant to the terms of the guaranty signed by Orenstein, he is jointly and severally liable with RV Fun for any debts incurred by RV Fun under the terms of the CASA. Verified Compl. ¶ 37.

5.      From time to time, RV FUN submitted orders to various manufacturers to purchase units of inventory consisting of recreational vehicles, and accessories and parts related thereto (the "Inventory") for its retail operations.  Verified Compl. ¶ 9; Answer ¶ 9.

6.      TFC financed the acquisition of certain Inventory for RV Fun pursuant to the CASA.  Verified Compl. ¶ 10; Answer ¶ 10.  A true and correct copy of the November 30, 2008 Inventory Billing Statement for RV FUN is attached to the Verified Complaint as Exhibit C.  Verified Compl. ¶ 10; *see also* Affidavit of Neal Herman filed  January 7, 2009 [Doc. 16-2] ("Herman Aff."), ¶ 9, 12(c).

---

[1]   Due to electronic distortion of the electronic version of the Verified Complaint and Exhibits thereto, TFC notes that a copy of the paper-filed Verified Complaint and all of the Exhibits thereto was filed via TFC's unopposed motion to substitute the paper-filed pleading and the exhibits for the documents electronically uploaded by the Clerk, on March 4, 2009, [Doc. 50], which motion was granted.  [Doc. 54]. Hereafter references to provisions in the CASA will be directly to "CASA § __" rather than to reference to Exhibit A to the Verified Complaint.

7.      Whether TFC would finance RV Fun's purchase of a certain item of Inventory was solely at the discretion of TFC, and therefore TFC was under no obligation to finance any particular item of Inventory sought to be purchased by RV Fun.  CASA § 2.

8.      A Statement of Financial Transaction ("SOFT") would be prepared by TFC and made available to RV Fun online and mailed to RV Fun with respect to each item of Inventory financed shortly after TFC's receipt of the manufacturer's invoice for that unit and entry into TFC's computer system.  The SOFT contains the details of each unit financed by TFC and the related financing terms – including the interest start date, the interest rate, the amount and date curtailment payments were due; and a description of the unit financed.  *See* CASA §§ 3-4; Affidavit of Mark Ryan filed simultaneously herewith ("Ryan Aff.") ¶ 8.

9.      TFC utilizes a reliable computer system, the Commercial Lending System ("CLS") for keeping data and account information for each dealer.  Herman Aff. ¶ 6.  There are various methods in place for checking and cross-checking the data to ensure accuracy. Herman Aff. ¶¶ 5, 7.

10.     TFC generates a month-end billing statement each month which is provided to the dealer, in this case RV Fun.  Herman Aff. ¶¶ 9-10.  TFC's Account Executive for the RV Fun account never received any complaints from RV Fun that any of the monthly billing statements were inaccurate.  Herman Aff. ¶ 10.

11.     Based upon the November 30, 2008 Inventory Billing Statement, as of November 30, 2008, RV Fun had a principal balance owed to TFC in the amount of $1,355,176.36.  Verified Compl. ¶ 13 & Ex. C; *see also* Herman Aff. ¶¶ 9, 12(c).

12.     Also based upon the November 30, 2008, Inventory Billing Statement, the unpaid interest and fees due to TFC as of November 30, 2008 was $8,423.19.   Verified Compl. ¶ 14.

13.     The CASA requires that proceeds from the sale of an item of Inventory be held in trust for the benefit of TFC until remitted to TFC.   Verified Compl. ¶ 25; CASA § 8; Ryan Aff. ¶ 9.

14.     At the time TFC filed its Verified Complaint, on January 2, 2009, TFC had knowledge that RV Fun had sold three items of Inventory for which it had failed to remit payment to TFC.   These three items were identified in the Verified Complaint, ¶ 12, and had a principal balance due of $31,104.00.

15.     When a dealer sells an item of Inventory without remitting payment, that item is classified in TFC's computer system as "sold and unpaid" ("SAU") or "sold out of trust" ("SOT") – which terms are used interchangeably in the dealer distribution and finance industry.   Ryan Aff. ¶ 10.

16.     On January 5, 2009, a Field Service Representative ("FSR") for TFC conducted an audit of RV Fun's sales lot and discovered there were seven items of Inventory missing for which RV Fun had not remitted payment to TFC.   Herman Aff. ¶¶ 16, 21.   As of January 5, 2009, the total unpaid principal due from RV Fun for SAU Inventory was $269,779.30.   Herman Aff. ¶ 21.

17.     RV Fun breached the CASA by failing to remit payment to TFC as and when due and by failing to hold the proceeds received upon the sale of items of Inventory in trust. Verified Compl. ¶¶ 11, 32; Ryan Aff. ¶ 30.

18.     In order to protect its security interest in the Inventory that had not been sold without remitting payment, TFC sent repurchase requests to the manufacturers of the Inventory.  Herman Aff. ¶ 24.

19.     These repurchase requests were sent pursuant to repurchase agreements entered into between TFC and certain manufacturers.  Ryan Aff. ¶ 11.  Pursuant to these repurchase agreements, the manufacturers agree to repurchase certain RVs at a contractually set amount.  Ryan Aff. ¶ 11.

20.     In order to protect its security interest in the Inventory that had not been sold without remitting payment, TFC repossessed its remaining Inventory, a total of 61 units, from RV Fun pursuant to this Court's Order granting TFC a prejudgment writ of replevin on January 21 through January 23, 2009.  Docs. 8, 10; Ryan Aff. ¶ 17.

21.     TFC incurred in excess of $15,911.31 in costs related to the repossession, storage, and transportation of the 61 units that it repossessed from RV Fun.  Ryan Aff. ¶ 29 & Ex. 5 thereto.  Pursuant to the CASA, RV Fun is obligated to pay the expenses incurred by TFC in repossessing the Inventory.  CASA ¶ 11; Ryan Aff. ¶ 28.

22.     The final list of items of Inventory sold out of trust by RV Fun, i.e, the items of Inventory not recovered by TFC during its repossession and recovery efforts, is as follows:

| Invoice # | Serial # | Manufacturer | Model | Current Amount Due |
|---|---|---|---|---|
| 51-95182-1 | 095182* | Gulf Stream Coach | 51-8-T-C259BHL | $11,054.00 |
| 00002912_051-1 | 5SFCG40319E201218 | Heartland Recreational Vehicles | 3914 | $46,196.00 |
| 50622-1 | 50622 | Heartland Recreational Vehicles | C3950 | $48,675.00 |
| 50017-1 | 050017* | Heartland Recreational Vehicles | 3210 | $10,000.00 |

| 51-98444-1 | 98444 | Gulf Stream Coach | 51-9-T-21MB | $8,437.10 |
| 0235171-IN-1 | 035171 | Pilgrim International, Inc. | 358RL4S-5 | $33,278.00 |
| 50397-1 | 050397 | Heartland Recreational Vehicles | 3912 | $46,894.00 |
| | | **TOTAL:** | | $204,534.10 |

Ryan Aff. ¶ 17.

23.     Following the repossession of the Inventory, TFC sent out the requisite Notices of Private Sale, and letters requesting bids on the Inventory recovered.  Ryan Aff. ¶ 19; Declaration of Jeffrey Olander ("Olander Decl."), filed simultaneously herewith, ¶ 6.

24.     TFC liquidated the Inventory, by seeking out the highest price obtainable through sales to individual dealers, through Bankers Liquidation's on-line auction BankersLiquidation.com ("Bankers"), and through repurchase by the manufacturers on qualified items.  Olander Decl. ¶¶ 7-10, 12; Ryan Aff. ¶¶ 21-23; *see also* Declaration of Steven Fetter filed simultaneously herewith("Bankers Decl.") ¶¶ 10, 13, 14.

25.     Bankers advertised the RV Inventory for sale on its heavily trafficked, national website and also worked with other RV dealers to secure the highest possible price for the RV Inventory.  Because Bankers advertised the Inventory nationally, it was able to reach a significantly larger market of potential purchasers than RV Fun would have been able to from its single lot in Jacksonville, Florida.  Olander Decl. ¶ 7; Bankers Decl. ¶¶ 8-14, 16-17.

26.     Of the 61 items of Inventory, 37 were repurchased by the original manufactures, 14 were sold through Bankers, and 10 were sold directly to dealers by TFC. Olander Decl. ¶¶ 8-10; Ryan Aff. ¶¶ 21-23.

27.     TFC recovered, through sale and/or repurchase by the manufacturer, $995,338.40 on the sixty-one (61) items of RV Inventory which collectively had an unpaid principal balance due at that time of $1,130,912.66.  Ryan Aff. ¶ 24.  This leaves due and owing by RV Fun a principal deficiency balance of $135,574.26.  Ryan Aff. ¶ 25.

28.     The amounts recovered by TFC through the various forms of liquidation – Bankers, advertisement and sale to dealers, and repurchase by manufacturers – were higher than typical in the current struggling RV market.  Olander Decl. ¶¶ 11-12; Bankers Decl. ¶ 17.

29.     Interest and fees have continued to accrue on RV Fun's account since the November 30 figure used in filing the Complaint.  Ryan Aff. ¶ 26.  As of November 25, 2009, the total due for interest and fees is $58,607.63.  Ryan Aff. ¶ 26 & Ex. 4 thereto.

30.     As of the filing of this Summary Judgment Motion, neither RV Fun nor anyone on RV Fun's behalf has paid TFC for the principal balance due, the interest and fees balance due, the costs incurred, nor any portion thereof.  Ryan Aff. ¶¶ 31-32.

31.     On March 20, 2009, TFC served discovery on RV Fun and Orenstein, which, after a series of agreed extensions, were due to be responded to on May 22, 2009.  *See* [Doc. 57, 57-2, 65].  A true and correct copy of TFC's First Request for Production of Documents to RV Having Fun Yet, Inc., is attached hereto as Exhibit B.

32.     As RV Fun and Orenstein failed to respond to the discovery requests, and defense counsel had advised he was having difficulty getting cooperation from his clients, TFC filed a Motion to Compel on June 5, 2009.  [Doc. 57]; *see also* [Doc. 59].

33.     On August 10, 2009, this Court held a hearing on TFC's Motion to Compel, and the Unopposed Motion to Withdraw by [Defense Counsel] John J. Kozak, Esquire and the law firm of Robbins Equitas, P.A., [Doc. 60] ("Motion to Withdraw").

34.     On August 17, 2009, this Court entered its Order consistent with its rulings at the hearing, in which it granted the Defendants until September 1, 2009 to fully respond to the discovery requests, overruled the Defendants' objection to Request Number 8, and reserved ruling on the award of attorneys' fees and costs until the extended time period had run.  [Doc. 64].  The Court further ordered that the Motion to Withdraw would be held in abeyance until September 1, 2009 in order to allow RV Fun time to find new counsel to represent it in the instant matter.  [Doc. 64].

35.     As no additional documents had been produced by Defendants pursuant to the Court's Order, TFC contacted defense counsel on September 2, 2009 to confirm no additional documents would be received.  *See* [Doc. 65, ¶¶ 7-9 & Ex. A thereto].  Following additional communications between counsel, and the determination that Defendants were non-responsive to the Court's Order and to defense counsel, TFC filed its Motion for Discovery Sanctions on September 17, 2009.  [Doc. 65].

36.     In its Motion for Discovery Sanctions, TFC requested that Defendants be precluded from filing or relying upon any documents responsive to TFC's discovery requests but not previously produced.  Attached hereto as Exhibit C is Defendants' Response to Plaintiff's First Request for Production and the documents provided therewith, which are bates-labeled RVHF000001 – RVHF00000118.[2]

---

[2]  TFC realizes the bates numbering is not technically accurate, as Defendants did not reduce

37.     On  November 9, 2009, this Court Ordered Defendant RV Fun to Show Cause

by November 25, 2009 as to why a default judgment should not be entered against it and its

counterclaim dismissed for failure to prosecute.  [Doc. 68].  Defendant Orenstein was also

Ordered to Show Cause why the Defendants should not be precluded from introducing into

evidence any documents that have been requested by TFC but not produced.[3]  [Doc. 68].

## II.     INCORPORATED MEMORANDUM OF LAW

### A.     <u>Summary Judgment Standard</u>

Summary judgment is warranted when the record evidence establishes that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  *See* Fed. R. Civ. P. 56(c).  Summary judgment should be granted when the

record, taken as a whole, could not lead a rational trier of fact to find for the non-moving

party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  The non-moving party

must go beyond the pleadings and present affirmative evidence showing that there is a

genuine issue of material fact for trial.  *Id*. at 252.  It is not sufficient for the non-moving

---

the leading zeros as the numbers increased into the tens and hundreds, nevertheless, this is
how the documents were labeled by Defendants.

[3]   Because the dispositive motion deadline is this Friday, November 27, 2009, and the
Thanksgiving holiday makes filing the Motion for Summary Judgment ("MSJ") on Friday
problematic for TFC, TFC is filing this MSJ prior to the Court's ruling pertaining to the
sufficiency of Defendants' response to the Court's Order to Show Cause, filed this afternoon
[Doc. 69].   TFC believes that Defendants have failed, in their response [Doc. 69], to
demonstrate good cause for their failure to comply with this Court's prior discovery order,
and TFC believes this Court will preclude the introduction of any further evidence by
Defendants based upon their inexcusable dilatory tactics.  While TFC also asserts that default
judgment should be entered against RV Fun pursuant to Local Rule 2.03(e), M.D.Fla., and
this Court's prior warnings, in the event the Court allows RV Fun additional time to obtain
counsel, and in order to comply with the Court's dispositive motion deadline, TFC herein
fully addresses the merits of all claims against both RV Fun and Orenstein, as well as RV
Fun's Counterclaim.

party to show a mere "scintilla" of evidence, or evidence that is merely colorable or not significantly probative, in support of its position. *Id.* Additionally, conclusory allegations and conjecture are not sufficient to overcome a motion for summary judgment. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

**B.      RV Fun Breached the CASA and Owes TFC $340,108.36 for Unpaid Principal.**

To establish a claim for breach of contract under Rhode Island law, a party must show: (i) the existence of an agreement; (ii) a right thereunder; and (iii) breach. *See Dugan v. Ford Motor Credit Co.*, C.A. No. 83-1727, 1984 WL 559279, at *3 (R.I. Super. May 31, 1984).[4] It is a well-settled principle of Rhode Island contract law that "the court should read the contract 'in its entirety, giving words their plain, ordinary, and usual meaning.'" *Irene Realty Corp. v. Travelers Property Casualty Co. of Amer.*, 973 A.2d 1118, 1122 (R.I. 2009) (quoting *Mallane v. Holyoke Mutual Ins. Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995)); *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004) (citing *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000)); *see also Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004) (confirming that clear and unambiguous terms of a contract "will be given their usual and ordinary meaning and the parties will be bound thereby");*A.F. Lusi Constr., Inc. v. Peerless Ins.*, 847 A.2d 254, 258 (R.I. 2004).   "If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written." *Rivera*, 847 A.2d at 284 (citing *W.P. Assocs. v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994)); *see also Flanagan v. Kelly's Sys. of New England, Inc.*, 286 A.2d 249, 251 (R.I. 1972).

---

[4]   As stated above, the CASA has a choice-of-law provision stating that the contract shall be governed by and construed in accordance with Rhode Island law.  CASA § 16.

1.    **RV Fun owes TFC the principal amount of $204,534.10 for the seven items sold out of trust.**

Pursuant to the CASA, RV Fun was to remit payment to TFC upon the sale of an item of Inventory.  CASA § 8; Facts ¶¶ 13, 15.[5]  Specifically, the CASA provides in pertinent part:

> Disposition of Inventory by Debtor; Release of Lien.
> Both Debtor and Secured Party intend for Debtor to sell the Inventory, but only in the ordinary course of its business as Debtor normally sells such Inventory.  Therefore, Debtor may sell any item of Inventory provided that: (a) Debtor is not in default hereunder, (b) the price obtained for such item of Inventory is not less than the unpaid Total Debt attributable thereto, and (c) unless otherwise agreed to by Secured Party in writing in a particular case, Debtor holds all of the proceeds of any such sale in trust for, and immediately remits the unpaid Invoice Cost of such item of Inventory to, Secured Party.  . . . Upon demand by Secured Party, Debtor shall immediately remit to Secured Party the full unpaid Invoice Cost of any item of inventory (which amount shall be applied in repayment of the Advance(s) relating to such item of Inventory or otherwise as determined by Secured Party in its sole discretion) as to which (i) Debtor receives any deposit or similar amount from a contemplated purchaser and/or (ii) Debtor enters into a contract to sell such item of Inventory.  The immediately preceding sentence shall not apply to any Inventory financed by Secured Party under a scheduled payment or other non-"pay as sold" program.

CASA § 8 (emphasis supplied).  Pursuant to this language, RV Fun was allowed to sell Inventory financed for it by TFC, but only in the ordinary course of its business and provided that:  (1) there was no default; (2) the unit was sold for what was owing to TFC on that unit; and (3) all the proceeds of sale were held in trust and immediately remitted to TFC, *unless otherwise agreed by TFC in writing in a particular case.  See id.*  RV Fun breached these

---

[5]  To avoid redundancy, TFC will refer to the Statement of Facts set forth above at **Section I** of this motion as "Facts ¶ __."  The reference to the particular numbered fact also includes and incorporates the supporting documentation thereto.

obligations by selling items of Inventory without immediately paying those sums to TFC or holding the proceeds in trust.  *See* Facts ¶¶ 13,15,17.

As RV Fun obtained over $200,000 worth of Inventory that was financed by TFC which it sold and received cash for, it cannot now dispute that it owes TFC the full principal due for these units.  Accordingly, summary judgment is appropriate and should be granted as to the $204,534.10 principal balance owed to TFC for the seven units sold out of trust.

**2.     RV Fun owes TFC the principal amount of $135,574.26 for the deficiency on the items recovered and sold by TFC.**

The CASA provides that in the event of default, TFC "shall have all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws."  CASA § 11.  Pursuant to the Uniform Commercial Code, after default, a secured party may take possession of the collateral securing the debt it is owed and sell, lease, license, or otherwise dispose of such collateral.  R.I Gen. Laws §§ 6A-9-609, 6A-9-610. After selling the collateral in a commercially reasonable manner, the secured party is entitled to any deficiency between the amount owed by the debtor and the amount recovered from the sale of collateral.  R.I. Gen. Laws § 6A-9-608.

The facts demonstrate that TFC met its obligations under the Uniform Commercial Code and sold in keeping with the best commercial practices of RV sellers in the RV industry.  Bankers Decl. ¶¶ 13-16.  TFC recovered sixty-one (61) items of Inventory from RV Fun.  TFC sent out the requisite notices of sale to RV Fun and Orenstein.  Facts ¶ 23. TFC also solicited bids on the recovered Inventory through its extensive network of dealers around the country, and utilized Bankers Liquidation's online auction, before it sold the Inventory to the buyers who offered to pay the most for the Inventory.  Facts ¶ 24-25.  Of the

61 items of Inventory repossessed by TFC, 37 were repurchased by the original manufacturers, 14 were sold through Bankers, and 10 were sold to dealers.  Facts ¶ 26.  TFC recovered, through sale and/or repurchase by the manufacturer, $995,338.40 on the sixty-one (61) items of RV Inventory which collectively had an unpaid principal balance due of $1,130,912.66.  There is a principal deficiency balance due of $135,574.26 that is currently due and owing from the dealer, RV Fun.  Facts ¶ 27.  As noted by Jeffrey Olander of TFC and Steven Fetter of Bankers, this recovery was extremely favorable given current market conditions in the RV industry.  Facts ¶ 28.

As TFC has complied with its obligations under the Uniform Commercial Code, it is entitled to judgment for the deficiency balance of $135,574.26.  *See* R.I. Gen. Laws § 6A-9-608.

**C.**     **RV Fun Owes TFC for Unpaid Interest and Fees.**

In return for TFC's agreement to finance RV Fun's acquisitions of recreational vehicles, RV Fun "promise[d] to pay to [TFC] the original invoice cost ("Invoice Cost") of each item of Inventory financed … *pursuant to each applicable FTD*, together with interest and charges on the Invoice Cost and/or fees on the account as specified in each applicable FTD and this Agreement .…"  CASA § 4(a) (emphasis supplied); *see also* CASA § 4(b) ("any such additional fees and/or charges . . . as Secured Party shall implement from time to time in connection with the servicing and/or administration of Debtor's account").  As set forth in the CASA, "Secured Party will provide to Debtor, in a manner chosen by Secured Party from time to time, a Statement of Financial Transaction, program letter, approval letter, billing statement or other documentation, as applicable, identifying Inventory and the

applicable financial terms for and Advance (each, a "Finance Terms Document" or "FTD"). CASA § 3.  The Statement of Financial Transaction, or SOFTs, are FTDs, and set forth the interest start date, the interest rate, and the schedule, as well as certain fees.  Facts ¶ 8.

As of the filing of this Motion, the interest and fees due from RV Fun is $58,607.63. Facts ¶ 29.  Accordingly, summary judgment should be granted in TFC's favor for the interest and fees due and owing by RV Fun.

**D.**     **TFC is Entitled to Its Expenses Incurred in the Repossession of Inventory.**

As shown throughout this memorandum, RV Fun defaulted under the CASA.  Thus, pursuant to the terms of the CASA, RV Fun is obligated to pay TFC the "expenses of retaking, holding, preparing for sale, selling and the like." CASA § 11.

TFC has incurred expenses in the transportation and storage of the repossessed items of Inventory in an amount exceeding $15,911.31.[6]  Facts ¶ 21.  TFC has also incurred, as of November 25, 2009, $13,083.00 in expenses for the maintenance of the bond required to be posted in the instant action.  Ryan Aff. ¶ 27.  The fees on the bond will continue to accrue until the bond is discharged by the Court.  TFC has consequently been damaged, as of November 25, 2009, in an amount in excess of $28,994.31 in repossessing RV Fun's inventory.  Thus, summary judgment should be entered in favor of TFC and against RV Fun in the amount of $28,994.31 as the actual expenses incurred by TFC in relation to the repossession of the Inventory, and for the additional amount of fees accruing on the bond.

---

[6] TFC's computer systems shows that the actual expenses incurred to date are $21,282.31; however, due to holiday vacations, the documentation readily available pertaining to the expenses supports only the $15,911.31 being requested herein.

E.     **TFC is Entitled to Its Attorney's Fees and Expenses Incurred in the Maintenance of this Action.**

According to the terms of the CASA, "Debtor is also responsible to pay all other costs and expenses incurred by Secured Party in connection with this Agreement, including but not limited to attorneys' fees and other legal expenses in connection with or arising out of any deficiency suit, collection actions or otherwise following an Event of Default."  CASA § 11.

TFC instituted this action as a result of RV Fun's default pursuant to the terms and conditions of the CASA.  TFC has incurred attorneys' fees and expenses and will continue to incur same through the completion of this case.  *See* Ryan Aff. ¶ 33.  Because TFC has established its entitlement to summary judgment against RV Fun for breach of contract, it is entitled to recover its fees and costs pursuant to the CASA.  Because TFC's fees and expenses will likely continue to accrue during the pendency of this Motion, TFC respectfully requests this Court allow TFC to present its evidence supporting the specific amount of its attorneys' fees and expenses upon this Court issuing its ruling on this dispositive Motion.  Accordingly, summary judgment should be granted to TFC as to RV Fun's liability for attorneys fees, which amount will be submitted and established by appropriate evidence upon the Court's ruling upon this Motion or at the completion of the case.

F.     **TFC is Entitled to Summary Judgment on RV Fun's Counterclaim.**[7]

In order to establish a claim for tortious interference with a business relationship the following elements must be shown: (1) existence of a business relationship; (2) TFC's

---

[7] As noted above, TFC believes RV Fun is due to be defaulted pursuant to Local Rule 2.03(e), which would also mean that RV Fun's Counterclaim is due to be dismissed.  *See supra* n.3.   Nevertheless, in the event the Court allows RV Fun additional time to obtain counsel, TFC moves for summary judgment as to the Counterclaim.

knowledge of the relationship; (3) TFC's intentional and *unjustified* interference with the relationship; and (4) damages to the plaintiff as a result. *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 504 (Fla. 5th DCA 2001) (emphasis added).  In addition, and above and beyond these requirements, it is further required that RV Fun show that malice underlies TFC's interference.  *Rockledge Mall Assoc., LTD v. Custom Fences of South Brevard, Inc.*, 779 So. 2d 554, 557 (Fla. 5th DCA 2001).  In fact, "[t]he existence of malice is key to the tort of tortious interference with a business relationship." *Id.* (citing *Southern Bell Tel. and Tel. Co. v. Roper*, 482 So. 2d 538 (Fla. 3d DCA 1986)).  There is no evidence that would support a showing of malice in this case because no such malice exists.  *See* Exhibit C attached hereto (Defendants' documents produced through discovery).

In order to show that a business relationship exists "[t]he test is whether there 'was an understanding between the parties [which] would have been completed had the defendants not interfered.'"  *Id.* (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).  If a sufficient business relationship is established as well as an interference with said relationship, it must be further shown that the interference was unjustified. *Heavener Ogier Servs., Inc. v. R.W. Florida Region, Inc.*, 418 So. 2d 1074, 1076 (Fla. 5th DCA 1982).  If TFC's interference is intended to "safeguard a preexisting economic interest of [its] own," then its right to protect its own established economic interest outweighs RV Fun's right to be free of interference, and "its actions are usually recognized as privileged and nonactionable." *Id.; see also Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA

1980) ("so long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable").[8]

In the instant matter, RV Fun alleges that it had advantageous business relationships with manufacturers. However, RV Fun relied upon TFC to fund its purchase of RVs from manufacturers, and therefore relied upon TFC's continued willingness to fund said purchases in order to maintain its business relationship. Facts ¶¶ 6-7. As noted above, in order for RV Fun's alleged relationship with manufacturers to be sufficient to form the basis for a claim of tortious interference, the relationship must be evidenced by an understanding or agreement that would have come to fruition had it not been for the alleged interference. *See St. Johns*, 784 So. 2d at 504. In reality, the alleged business relationship at the base of RV Fun's counterclaim – the manufacturers' continued supply of RVs to RV Fun – was in no way certain, and was in fact wholly dependent upon TFC's decision to fund future purchases. Facts ¶ 7. Furthermore, TFC's determination whether to continue funding purchases by RV Fun implicates much larger economic interests such as TFC's nationwide RV floorplan financing business and its relationships with manufacturers that predate its relationship with RV Fun. *See Ethyl*, 386 So. 2d at 1225 (activities taken to safeguard one's one economic interests are non-actionable).

Because of TFC's unfettered contractual right to determine whether to fund RV Fun's future purchase of RVs from manufacturers, there was no agreement or understanding between RV Fun and manufacturers that would have been completed absent TFC's

---

[8] RV Fun's counterclaim contains no allegations that TFC utilized improper methods, which have been defined as "defamation, bribery, physical violence, misrepresentations, unfounded threats or intimidation, or other wrongful conduct." *Slip-N-Slid Records, Inc. v. TVT Records, LLC*, 2007 WL 3232274, at * 5 n.2 (S.D. Fla. Oct. 31, 2007).

interactions with manufacturers.  Consequently, RV Fun has failed to establish that it had a sufficient business relationship, and therefore has failed to establish the first element of tortious interference with a business relationship.  *See St. Johns*, 784 So. 2d at 504.

Furthermore, when TFC is able, based upon its long term business relationships with manufacturers, to request that said manufacturers repurchase RVs recovered from a dealer in default, it is able to lessen its potential loss in relation to the dealers' default.  TFC's business relationships with manufacturers significantly predate TFC's relationship with RV Fun, and implicate economic interests that greatly exceed the monetary concerns at issue in this matter alone.  TFC's contractual agreements with the manufacturers allow TFC to lessen its losses (and thereby the dealer's) when a dealer defaults by requiring the manufacturers to repurchase certain RVs at a contractually set price  Facts ¶¶ 18-19.

Because RV Fun had sold RVs without remitting payment therefore to TFC, and because TFC feared that RV Fun would continue to sell RVs without remitting payment to TFC, TFC contacted the manufacturers in regards to their obligations under their respective agreements.  Facts ¶ 18.  TFC contacted the manufacturers to protect TFC's economic interests and to arrange the repurchase of certain RVs to the manufacturers in an effort to limit TFC's losses upon repossession, as the manufacturers were obligated to pay, in most cases, 90-100% of the original invoice cost.  This communication with the manufacturers, which was made pursuant to its own contractual relationships with the manufacturers, and was in no way contrary to the terms of the CASA, was made to further TFC's own economic interests, and therefore cannot form the basis of a claim for tortious interference.  *See Heavener*, 418 So. 2d at 1076*; see also Ethyl*, 386 So. 2d at 1225.

In the course of discovery, TFC requested all evidence in RV Fun's possession that supported, in any way, its allegations in its counterclaim. *See* Exhibit B hereto, TFC's First Request for Production, Request Nos. 16-24. RV Fun produced no documentation or ESI that would establish, or even support, the necessary elements for a tortious interference claim.[9] Nor does any of the evidence produced by RV Fun rebut the evidence and arguments presented by TFC herein. Accordingly, as RV Fun is unable to establish necessary elements of its claim or create a question of fact, summary judgment is appropriate and should be granted in favor of TFC and against RV Fun on RV Fun's Counterclaim. *See Mayfield*, 101 F.3d at 1376 (advising that conclusory allegations and conjecture are not sufficient to overcome a motion for summary judgment); *Liberty Lobby*, 477 U.S. at 255 (explaining that the non-moving party must go beyond the pleadings and present affirmative evidence showing that there is a genuine issue of material fact for trial).

**G.      Orenstein is Jointly and Severally Liable for the Sums Owed to TFC by RV Fun.**

Orenstein signed a personal guaranty as an inducement for TFC to enter into a financing agreement with RV Fun. *See* Facts ¶ 3. Pursuant to the terms of the guaranty signed by Orenstein, he is jointly and severally liable with RV Fun for any debts incurred by RV Fun under the terms of the CASA. *See* Facts ¶¶ 3-4.[10] In fact, the guaranty is absolute and unconditional, and specifically provides in pertinent part:

---

[9]   Notably, nearly all 118 pages of documents produced by RV Fun are copies of warranty claims made to the manufacturers on various RVs. *See* Exhibit C hereto.

[10] The guaranty is attached as Exhibit B to the Verified Complaint, a corrected copy of which was filed attached to Doc. 50. References to specific sections of the guaranty will be to the guaranty itself.

3.   <u>Absolute Nature of Guaranty</u>.   The obligations of Guarantor under this Guaranty are absolute and unconditional.   Guarantor shall not be released from such obligations for any reason, nor shall such obligations be reduced, diminished or discharged for any reason, including:

. . .

(c)   <u>Invalidity of Guaranteed Obligations.</u>   The invalidity, illegality or unenforceability of any Guaranteed Obligation for any reason whatsoever, including, but not limited to: the existence of valid defenses, counterclaims or off-sets to any Guaranteed Obligation; the violation of applicable usury laws by any Guaranteed Obligation; . . . .

Guaranty § 3.   Thus, even if the Court were to find that RV Fun was due some set-off for its tortious interference claim (which TFC asserts it is not), Orenstein would nevertheless still be obligated for the full amount due and owing to TFC pursuant to the express terms of the guaranty.

As shown above, RV Fun is liable to TFC for: $204,534.10 for items sold out of trust; $135,574.26 for principal deficiency on the units recovered; $58,607.63 for interest and fees as of the date of filing this Motion; $28,994.31 for TFC's costs related to its repossession of RV Fun's inventory; as well as attorneys' fees and costs to be assessed at the completion of the case.   Thus, RV Fun's total liability to TFC is $414,627.30, plus accruing interest, attorneys' fees and costs.

The entry of summary judgment against Orenstein, jointly and severally, and for TFC in the amount of $414,627.30, plus accruing interest, attorneys' fees and costs, is appropriate and should be granted because TFC has established that Orenstein entered into a valid guaranty with TFC, that Orenstein has breached his guaranty by failing and refusing to remit payment, and that TFC has been damaged as a result of their respective breaches.

## III.    CONCLUSION

TFC has demonstrated that there are no questions of material fact as to the issues addressed above, that Defendants have breached their agreements with TFC, and that TFC is entitled to judgment as a matter of law on its Complaint as well as RV Fun's Counterclaim.

Accordingly, Plaintiff, TEXTRON FINANCIAL CORPORATION, respectfully requests that this Court enter Summary Judgment in its favor and against Defendant, RV Fun in the amount of $414,627.30 as follows:

(i)    in the amount of $204,534.10 for principal owed on items of inventory sold without remitting payment therefore to TFC;

(ii)    in the amount of $135,574.26 for the principal deficiency balance on the items of inventory recovered and sold by TFC;

(iii)    in the amount of $58,607.63 for unpaid interest and fees, plus interest continuing to accrue daily;

(iv)    in the amount of $28,994.31 for the repossession and bond costs incurred by TFC as a result of RV Fun's breach of the terms of the CASA; and

(v)    for attorneys' fees and costs incurred by TFC in the maintenance of this action, to be determined at the completion of the case.

TFC further requests this Court enter Summary Judgment against Phillip Orenstein, jointly and severally, in the amount of $414,627.30, plus accruing interest and attorneys' fees and costs, for his breach of his personal guaranty.  TFC requests the Court enter such other and further relief that this Court deems just and proper.

Dated: November 25, 2009.                               Respectfully submitted,

                                                                              *s/ Kelly J.H. Garcia*

James E. Foster, Esq.
Florida Bar No.142015
Kelly J.H. Garcia, Esq.
Florida Bar No. 694851
**Akerman Senterfitt**
Post Office Box 231
Orlando, Florida  32802-4950
Telephone:  407-843-7860
Facsimile:  407-843-6610
Email: james.foster@akerman.com
        kelly.garcia@akerman.com

### Certificate of Service

I hereby certify that on November 25, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF and via U.S. Mail to Phillip Orenstein, 86184 Maple Leaf Place, Yulee, FL 32097.

_/s/ Kelly J.H. Garcia_
Attorney