**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TEXTRON FINANCIAL CORPORATION,
a Delaware corporation,

    Plaintiff/Counter-Defendant,

vs.                                                         CASE NO. 3:09-cv-002-J-34TEM

RV HAVING FUN YET, INC., a Florida
corporation, and PHILLIP ORENSTEIN, an
individual,

    Defendants/Counter-Claimants.

_____

# **REPORT AND RECOMMENDATION**[1]

This matter has been referred to the undersigned for issuance of a Report and Recommendation regarding the amount of damages that should be awarded to Plaintiff/Counter-Defendant, Textron Financial Corporation ("Textron"), pursuant to the District Court's March 19, 2010 Order finding Defendant RV Having Fun Yet, Inc. ("Defendant RV") in default (Doc. #83, Order). For the reasons stated herein, it is respectfully **RECOMMENDED** that Judgment enter against Defendant RV in the amount of **$532,359.91**, plus post-judgment interest.

---

[1]Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to file a timely objection waives a party's right to a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

## I. Procedural History

This is a breach of contract action, wherein Textron alleges Defendant RV breached a Credit and Security Agreement that was entered into between the parties for the purpose of enabling Defendant RV (a recreational vehicle ("RV") dealer) to acquire RVs from manufactures to sell for a profit (*see* Doc. #1 at 12-17, Agreement). In conjunction with the Agreement, Defendant Phillip Orenstein ("Orenstein") signed a personal guaranty (Doc. #1 at 16-17, Guaranty). The Guaranty provides, *inter alia*, that Orenstein shall personally guarantee the payment of all indebtedness, obligations, and liabilities of Defendant RV pursuant to the Agreement, *supra* (Doc. #1 at 16).[2]

In the March 19, 2010 Order (Doc. #83), *supra*, the District Court adopted the Report and Recommendation of the undersigned, which recommended that Defendant RV be adjudged in default with respect to the factual allegations set forth in the verified complaint (Doc. #83 at 17; *see also* Doc. #78, Report and Recommendation). Pursuant to said Order, the District Court referred the determination of damages against Defendant RV to the undersigned for issuance of a Report and Recommendation (Doc. #83 at 17).

## II. Discussion

### A. Liability

A party's default is merely an admission of the facts cited in the complaint, which by themselves may or may not be sufficient to establish a defendant's liability. *Am. Res. Ins. Co., Inc. v. Evoleno Co., LLC*, No. 07-0035-WS-M, 2008 WL 4701350, at *3 (S.D. Ala. Oct. 23, 2008). Before entering default judgment, the Court must ensure that it has

---

[2]It should be noted that the District Court has found that, pursuant to the Guaranty, Defendant Orenstein is jointly and severally liable for sums found to be owed by Defendant RV (Doc. #96 at 11).

jurisdiction over the claims, and that the complaint adequately states a claim for which relief may be granted. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). In this instance, the Court has previously determined that jurisdiction is proper and that the complaint (Doc. #1) sufficiently states a claim for relief against Defendant RV (*see* Doc. #7; Doc. #39). However, even in the context of a default, the Court must determine whether there is a "legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

The Agreement provides that Rhode Island state law shall govern the terms and conditions of the parties' contractual relationship (Doc. #1 at 15, Agreement). In addition, the Guaranty provides that Rhode Island state law shall govern its terms and conditions (Doc. #1 at 17, Guaranty).

In order to create a valid contract under Rhode Island law, the parties must intend to be bound by the terms of the agreement. *See UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 79 (R.I. 1994). "[U]nless the terms of a written contract are ambiguous, it should be interpreted as a matter of law in accordance with its plain terms." *R.I. Depositors Econ. Prot. Corp. v. Coffey & Martinelli*, Ltd., 821 A.2d 222, 226 (R.I. 2003). "In the absence of an ambiguity, courts afford the term its plain, ordinary, and literal meaning, enforcing what is deemed to be the objective manifestation of the parties' expectations." *Am. Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1195 (R.I. 2002). Section 6A-9-203(a) of the General Laws of Rhode Island provides that, for a security interest to be enforceable, it must be signed by the debtor and contain a description of the collateral.

Although the undersigned would note that the Agreement was not signed by a representative of Textron, Defendant RV's president, Orenstein (the debtor), affixed his

signature to the Agreement, which contains a description of the collateral (*see* Doc. #1 at 12-13, 15).  Orenstein also signed the Guaranty whereby he irrevocably personally guaranteed to Textron payment of all indebtedness, obligations, and liabilities of Defendant RV (Doc. #1 at 16-17, Guaranty).  As noted in *Caslowitz v. Ocean State Video Group, Inc.*,

> [The] General Laws [of Rhode Island] § 6A-9-105(h) defines a 'security agreement' only as '. . . an agreement which creates or provides for a security interest.'  An 'agreement' is, in turn, defined by § 6A-1-201(3) as 'the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance. . . .'  Neither definition requires that a security agreement be denominated as such or that it consists of a single document.

No. 13702, 1981 WL 390973, at *3 (R.I. Super. Oct. 14, 1981).

Here, the Agreement and the Guaranty, taken in conjunction, demonstrate that Defendant RV and its president, Orenstein (who is named in and signed the subject documents), intended to be bound by the security agreement (*see* Doc. #1 at 12-17).  The parties' course of performance also supports the validity of the security agreement.  For instance, from July 2007 through August 2008, Defendant RV was provided with various items of inventory pursuant to the Agreement, which it accepted (*see* Doc. #1 at 18-25, Inventory Billing Statement).  Moreover, Defendant RV, having failed to defend this action despite ample opportunity and various warnings form the Court has left no dispute as to whether the Agreement is a valid contract or that Defendant RV intended to be bound (*see* Doc. #1 at 15 and 17).  Based on the foregoing, the undersigned finds that, pursuant to the laws of Rhode Island, a valid and enforceable security agreement exists between the parties.

### B. Breach of Contract Damages

Pursuant to the default, Defendant RV has admitted that it breached the Agreement. In addition, Textron has filed a motion for entry of judgment, wherein it avers it is owed breach of contract damages in the amount of $465,874.09 as follows: (1) $204,534.10 for principal related to inventory that was sold by Defendant RV without remitting payment to Textron; (2) $135,574.26 for a deficiency balance on items of inventory that were recovered and sold by Textron; (3) $39,994.31 for repossession and bond costs;[3] and (4) $85,771.42 in unpaid interest and fees (Doc. #89 at 2; *see also* Doc. #101 at 2). The aforementioned amounts are supported by affidavits and documentary evidence (*see* Doc. #89-1, affidavit and attached exhibits of Peter Nicandri; *see also* Doc.#101-1, affidavit of Larry Frye).

As the record evidence is sufficient in this regard, the undersigned has determined an evidentiary hearing is not required in order to calculate the amount of damages due and owing to Textron. Where the record is sufficient, a court may determine damages without a hearing. Rule 55(b)(2)(B); *see e.g., Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

Base on the foregoing, the undersigned finds that the evidence provided by Textron sufficiently sets forth breach of contract damages in the amount of $465,874.09.

### C. Reasonable Attorneys' Fees

The Agreement (and the Guaranty) provide for an award of attorneys' fees with respect to any enforcement of the terms of the Agreement (Doc. #1 at 14; Doc. #1 at 17). In determining the fee amount to which a party to a security agreement is entitled, courts

---

[3]At the Court's direction, Textron submitted documentation which reflects additional bond costs and interest charges that have accrued since November 25, 2009 (Doc. #101; *see also* Doc. #99, Order).

in the Eleventh Circuit "look to the law of the state in which the security instruments were executed" *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993). As noted previously, Rhode Island state law applies in this instance.

Rule 1.5 of the Rhode Island Supreme Court Rules of Professional Conduct provides the factors to be used in determining the reasonableness of an attorney's fee. Such factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the requisite skill to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

In addition, the "lodestar" principal is applicable in Rhode Island to the extent it agrees with Rule 1.5. *Gooding Realty Corp. v. Bristol Bay CVS, Inc.*, No. PD 99-4987, 2001 WL 1643802, *3 n.1 (R.I. Super. Dec. 17, 2001), *amended*, No. PD 99-4987, 2002 WL 393175 (R.I. Super. Mar. 8, 2002). The "lodestar" method calculates a reasonable attorney's fee award by multiplying the reasonable hourly rate by the reasonable number of hours expended, resulting in the lodestar figure. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Textron request attorneys' fees in the amount of $73,275 (Doc. #89 at 3; *see also* Doc. #101 at 3). This amount represents time expended by four (4) attorneys and three (3) paralegals (Doc. #89-2 at 2, Affidavit of Time and Fees). Specifically, Textron's fee

request is based upon hourly rates of $537.40 for James E. Foster, Esq.; $364.52 per hour for Kelly J.H. Garcia, Esq.; $320.65 per hour for Jacob A. Brown, Esq.; $188.20 per hour for David A. Meek, II, Esq.; $187.15 per hour for paralegal T. Arlene Waite, Sr.; $101.18 per hour for paralegal Joseph E. Volpe; and $86.09 per hour for paralegal Jennifer S. Meehan (Doc. #89-2 at 2).

Those seeking attorneys' fees "bear[ ] the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299. Satisfactory evidence of rates may be provided in the form of direct evidence of rates charged by lawyers under similar circumstances or by opinion evidence. *See id.* Parties attempting to substantiate the reasonableness of a rate may wish to provide testimony of other lawyers to provide a basis for a court's analysis. *See id.* at 1300. Evidence of prevailing views among practitioners in the community often assists a court in its determination in this regard. *See id.* at 1301. A failure of the parties to provide sufficient evidence to support the relief requested, however, will not prevent a court from determining a reasonable fee. Instead, the court "may make the [fee] award based on its own experience." *See id.* at 1303. As noted in *Norman*, "the court, either trial or appellate, is itself an expert on the question [of fees] and may consider its own knowledge and experience . . . [in forming] an independent judgment either with or without the aid of witnesses as to value." *Id.*

Textron has provided an affidavit of Peter E. Nicandri, Esq., an attorney practicing in the Middle District of Florida in the area of commercial litigation (Doc. #89-1 at 1). Mr. Nicandri is a shareholder at the law firm of Milam Howard Nicandri Dees & Gillam, P.A., in Jacksonville, Florida (Doc. #89-1 at 1). He has been a member of the Florida Bar in good

standing since 1989 (Doc. #89-1 at 1).  Mr. Nicandri maintains that, in his opinion, the fees requested are reasonable for attorneys and paralegals located in the Middle District of Florida (Doc. #89-1 at 1).

The undersigned, however, finds some of the amounts requested to be slightly excessive.  For instance, although Mr. Nicandri represents that James E. Foster, Esq. is a respected commercial litigator with over thirty-five (35) years of experience (Doc. #89-1 at 3), other courts in the Middle District of Florida have found that hourly rates ranging from $370 to $440 are reasonable for an attorney with over thirty (30) years of litigation experience.  See SEC. v. Kirkland, No. 6:06-cv-183-Orl-28KRS, 2008 WL 4144424, at *9-10 (M.D. Fla. Sep. 5, 2008); Kolcynski v. United Space Alliance, LLC, No. 6:04-cv-716-Orl-18KRS, 2006 WL 3614919, at *4 (M.D. Fla. Dec.11, 2006).  The Kirkland court, supra, awarded $440 per hour for an attorney with thirty-seven (37) years of experience, and $435 per hour to several other attorneys—although it is unclear how many years of experience these particular individuals had.  See Kirkland, 2008 WL 4144424, at *9-12.  The Kirkland court also awarded $450 for one attorney with fifty-four (54) years of litigation experience.  Id.  Indeed, $450 per hour is the highest award within the Middle District of Florida that the undersigned has found.  Based on the foregoing, the undersigned will recommend that Mr. Foster's reasonable hourly rate be set at $425 per hour.[4]

---

[4] As noted by the Honorable John Antoon, II, "the Court is concerned solely with the amount of fees to be taxed against Defendants, and that amount must be objectively reasonable.  To the extent there is a gap between what is reasonable and what Plaintiff has agreed to pay its counsel, Defendants are not responsible for that upcharge."  Country Inns & Suites by Carlson, Inc. v. Interstate Properties, LLC, No. 6:07-cv-104-Orl-28DAB, 2009 WL 3535631, *4 n. 4 (M.D. Fla. Oct. 28, 2009).

With respect to the hourly rates requested by attorneys Garcia, Brown, and Meek, the affidavit of Mr. Nicandri provides that their experience ranges from two (2) to ten (10) years (*see* Doc. #89-1 at 3-4). Mr. Nicandri further states (without elaboration) that their requested fees are reasonable (*see* Doc. #89-1 at 3-4).

The Court would note that the biographical information for attorneys Garcia and Brown, which is available at the website of Akerman Senterfitt, LLP, reveals, *inter alia*, that both these individuals: (1) graduated from law school in 1998; (2) have federal law clerk experience; and (3) are shareholders at Akerman Senterfitt, LLP.[5] The biographical information related to Mr. Meek, II, reveals that he graduated from law school in 2008.[6]

In this instance, Textron requests $364.52 per hour for Garcia's services and $320.65 for Brown's services (Doc. #89-2 at 2). Based on their years of experience, however, the undersigned finds such rates to be slightly excessive. To illustrate, commercial litigators in the Middle District of Florida with eight (8) to ten (10) years of experience have generally been awarded amounts that range from $235 to $325 per hour. *See e.g.*, *Armstrong v. Colonial Bank, N.A.*, No. 6:06-cv-38-Orl-22KRS, 2007 WL 4482174, at *3-5 (M.D. Fla. Dec. 19, 2007); *Kirkland*, 2008 WL 4144424, at *9-12.

Consequently, the undersigned will recommend that Ms. Garcia's reasonable hourly rate be set at $340 per hour and that Mr. Brown's rate be set at $300 per hour. The undersigned finds Mr. Meek's hourly rate of $188.20 to be reasonable.

---

[5] *See* AKERMAN SENTERFITT, LLP, www.akerman.com/bios/bio.asp?id=736&name=Garcia; www.akerman.com/bios/bio.asp?id=152&name=Brown (last visited Dec. 13, 2010).

[6] *See* AKERMAN SENTERFITT, LLP, www.akerman.com/bios/bio.asp?id=1257&name=Meek II (last visited Dec. 13, 2010).

With respect to paralegal T. Arlene Waite, Sr., the undersigned finds $187.15 per hour to be excessive. To illustrate, courts in the Middle District of Florida have determined $95.00 per hour to be a reasonable rate for paralegal services in this market. *See Montgomery v. Fla. First Fin. Group, Inc.*, No. 6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, at *14 (M.D. Fla. Aug. 12, 2008) ("A reasonable rate for a paralegal in the central Florida market is between $75.00 and $95.00."); *see also Celaya v. Stickle*, No. 6:08-cv-1930-Orl-18GJK, 2009 WL 1513258, at *4-5 (M.D. Fla. May 27, 2009); *Kolczynski*, 2006 WL 3614919 at *7 (finding $75 to be a reasonable rate for paralegal services). Indeed, the highest award for paralegal services in the Middle District of Florida that the undersigned has found is $105 per hour. *See SEC v. Kirkland*, No. 6:06-cv-183-Orl-28KRS, 2008 WL 5191230, *4 (M.D. Fla. Dec. 10, 2008).

Based on the foregoing, the undersigned will recommend that T. Arlene Waite, Sr.'s hourly rate be set at $105 per hour. As to paralegals Joseph E. Volpe and Jennifer S. Meehan, the undersigned finds their hourly rates of $101.18 and $86.09, respectively, to be reasonable. *See id.*

Regarding the time and labor required to resolve this matter, the undersigned finds the hours expended to be reasonable. To illustrate, this case has been pending for over twenty-three (23) months and has involved a number of proceedings that attributed to the fees incurred. For instance, this cause began with motions and hearings for the issuance of a temporary restraining order and a writ of replevin (*see e.g.*, Docs. #2, #3, #7, and #8). Subsequently, after several proceedings, the temporary restraining order was converted into a preliminary injunction (*see e.g.*, Docs. #23, #26, #29, #31, #36, and #39). In its answer to the verified complaint (Doc. #43), Defendant RV filed a counterclaim.

Consequently, Textron was required to respond and seek discovery in order to prepare a defense. Textron had to move to compel discovery responses, and a hearing was held in which the motion was granted (Doc. #64). In order to seek enforcement of the Court's order compelling discovery, Textron had to file multiple additional motions (*see e.g.*, Docs. #65, #68, #69, #74, #77, and #78). Textron was also required to prepare and file a dispositive motion as to not only its claims but also as to the counterclaim and defenses asserted by Defendants.

Textron seeks a total of 233.15 hours in attorney time and 40.9 hours in paralegal time (Doc. #89-2 at 2). It also appears that Textron's counsel made various reductions to eliminate timekeepers who had only minimal or miscellaneous association with the file, or where certain tasks by more than one timekeeper might appear to be duplicative (*see* Doc. #89 at 3 n.3; *see also* Doc. #89-2, affidavit of James E. Foster, Esq.).

After considering the factors provided for in Rule 1.5, *supra*, for determining the reasonableness of an attorney's fee, and for the aforementioned reasons, the undersigned finds the following hours and award to be reasonable:

| **Individual** | Hours Sought | Reasonable Hours | Rate Sought | Reasonable Rate | **Total** |
|---|---|---|---|---|---|
| James E. Foster, Esq. | 29.10 | 29.10 | $537.40 | $425.00 | $12,367.50 |
| Kelly J.H. Garcia, Esq. | 63.45 | 63.45 | $364.52 | $340 | $21,573.00 |
| Jacob A. Brown, Esq. | 18.30 | 18.30 | $320.65 | $300 | $5,490.00 |
| David A. Meek, Esq. | 122.30 | 122.30 | $188.20 | $188.20 | $23,016.86 |

| T. Arlene Waite, Sr. (paralegal) | 19.30 | 19.30 | $187.15 | $105.00 | $2,026.50 |
| Jennifer S. Meehan (paralegal) | 11.50 | 11.50 | $86.09 | $86.09 | $990.04 |
| Joseph E. Volpe (paralegal) | 10.10 | 10.10 | $101.18 | $101.18 | $1,021.92 |
| **TOTAL** | | | | | **$66,485.82** |

### III. Conclusion

Based on the foregoing, it is hereby **RECOMMENDED**:

1. That Judgment be entered in favor of Plaintiff Textron Financial Corporation for a total of **$532,359.91** as follows:

    (i) breach of contract damages in the amount of $465,874.09; and

    (ii) reasonable attorneys' fees in the amount of $66,485.82.

2. That Plaintiff Textron Financial Corporation be awarded any post-judgment interest at the statutory rate.

3. That the Judgment enure to **RV Having Fun Yet Inc.** as opposed to RV Having Fun Yet, Inc.[7]

---

[7]Textron maintains that its counsel recently discovered that there is no comma in Defendant's name between the words "Yet" and "Inc." (*see* Doc. #89 at 1 n.1). Although the pleadings have included the comma since the inception of the case, the undersigned finds the Judgment should exclude the extraneous comma.

**DONE AND ENTERED** at Jacksonville, Florida this 28th day of December, 2010.

*/s/ Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
All Counsel of Record
*Pro Se* Parties.